UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SAMBATH PAL,

                Petitioner,

    v.                                                  Case No. 18-CV-404

WARDEN PAUL S. KEMPER,

                Respondent.

## RECOMMENDATION ON THE PETITION FOR A WRIT OF HABEAS CORPUS

### 1. Facts and Procedural History

Sambath Pal was driving his father's SUV when he swerved into oncoming traffic and struck a group of motorcyclists. *State v. Pal*, 2017 WI 44, ¶5, 374 Wis. 2d 759, 893 N.W.2d 848. Pal never stopped, leaving one motorcyclist dead in the middle of the road and another dying. *Pal*, 2017 WI 44, ¶5. The second motorcyclist later died. The state charged Pal with two counts of hit-and-run involving death, one count for each person Pal killed. Although he pled guilty to these two charges, Pal argued on appeal that the charges were multiplicitous.

After the Wisconsin Supreme Court affirmed his conviction, *Pal*, 2017 WI 44, 374 Wis. 2d 759, 893 N.W.2d 848, Pal filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. He argues that the two charges were multiplicitous, and that "[t]he multiplicity test used by the Wisconsin Supreme Court violated Mr. Pal's right to due process." (ECF No. 1 at 6.) Pal argues that the Wisconsin Supreme Court should have used the "unit of prosecution" test, *cf. Sanabria v. United States*, 437 U.S. 54, 69-70 (1978), instead of the *Blockburger* test, *see Blockburger v. United States*, 284 U.S. 299, 304 (1932).

The respondent moved to dismiss Pal's petition. (ECF No. 8.) The respondent argues that whether a charge is multiplicitous is a matter of state law and therefore not a cognizable federal habeas claim.

**2. Multiplicity**

Multiplicity describes the impermissible charging of a single offense in multiple counts. *Sanchez-Rengifo v. Car*away, 798 F.3d 532, 537 (7th Cir. 2015). "The purpose of this rule is to prevent multiple punishments for the same act in violation of the Double Jeopardy Clause of the Fifth Amendment." *Lechner v. Litscher*, 213 F. Supp. 2d 975, 992 (E.D. Wis. 2002) (citing *Schiro v. Farley*, 510 U.S. 222, 229 (1994); *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). Broadly speaking, there are two sorts of multiplicity challenges. In some cases a single act leads to the state charging a defendant with violating multiple statutes. *See, e.g., United States v. Muhammad*, 120 F.3d 688, 702-03 (7th

Cir. 1997). In other cases a single act leads to the state charging a defendant with multiple counts of violating the same statute. *See, e.g.*, *Sanchez-Rengifo*, 798 F.3d at 538.

That is not to say a defendant cannot be convicted of multiple crimes, or even multiple counts of the same offense, for a single act. Rather, as regards multiplicity, the Double Jeopardy Clause prohibits only punishment greater than the legislature intended. *See McCloud v. Deppisch*, 409 F.3d 869, 873 (7th Cir. 2005) ("[T]he Double Jeopardy Clause does not preclude the imposition of multiple punishments for the same offense, so long as the legislature has authorized cumulative punishment."). "In short, 'the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed.'" *Sanchez-Rengifo*, 798 F.3d at 537 (quoting *Albernaz v. United States*, 450 U.S. 333, 344 (1981)).

"[D]etermining the permissibility of imposing multiple punishments for one course of conduct is a matter of discerning the legislature's intent." *Sanchez-Rengifo*, 798 F.3d at 537 (quoting *United States v. Patel*, 370 F.3d 108, 114 (1st Cir. 2004)). "Although [plaintiff]'s double jeopardy claim presents a federal question, it is one that turns on the intent of the Wisconsin legislature." *McCloud*, 409 F.3d at 875. A federal court is bound by a state court's finding as to the intent of the state's legislature. *Id.* (citing, in part, *Ohio v. Johnson*, 467 U.S. 493, 499 (1984) ("We accept, as we must, the Ohio Supreme Court's determination that the Ohio Legislature did not intend cumulative punishment for the

two pairs of crimes involved here."); *Missouri v. Hunter*, 459 U.S. 359, 368 (1983) ("The Missouri Supreme Court has recognized that the legislature intended that punishment for violations of the [two] statutes be cumulative. We are bound to accept the Missouri court's construction of that State's statutes."); *Brown v. Ohio*, 432 U.S. 161, 167 (1977) ("We are mindful that the Ohio courts 'have the final authority to interpret … that State's legislation.'") (quoting *Garner v. Lou*isiana, 368 U.S. 157, 169 (1961))).

Pal was convicted of two counts of hit-and-run causing death, in violation of Wis. Stat. § 346.67(1), which states:

> (1) The operator of a vehicle involved in an accident shall reasonably investigate what was struck and if the operator knows or has reason to know that the accident resulted in injury or death of a person or in damage to a vehicle that is driven or attended by a person, the operator shall stop the vehicle he or she is operating as close to the scene of the accident as possible and remain at the scene of the accident until the operator has done all of the following:
>
> > (a) The operator shall give his or her name, address and the registration number of the vehicle he or she is driving to the person struck or to the operator or occupant of or person attending any vehicle collided with; and
> >
> > (b) The operator shall, upon request and if available, exhibit his or her operator's license to the person struck or to the operator or occupant of or person attending any vehicle collided with; and
> >
> > (c) The operator shall render reasonable assistance to any person injured in the accident, including transporting, or making arrangements to transport the person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that medical or surgical treatment is necessary or if requested by the injured person.

Pal argues that, although he killed two people, there was only one accident. Therefore, he could be convicted of only one violation of the statute. The Wisconsin Supreme Court found that the statute imposed on Pal distinct duties with respect to each victim, concluding that the legislature intended multiple punishments when multiple deaths result from a single hit-and-run accident. *Pal*, 2017 WI 44, ¶¶24, 28.

Pal insists he is not challenging the Wisconsin Supreme Court's finding of legislative intent. (ECF No. 11 at 4 ("Mr. Pal does not challenge the legislative intent behind the statute here"); *see also* ECF No. 11 at 6 ("Mr. Pal does not challenge the findings that the Wisconsin Supreme Court made in his case, as Kemper alleges.").) Rather, Pal's claim is that the Wisconsin Supreme Court used the wrong test for determining whether the charges were multiplicitous.

Under Wisconsin law, if offenses are not identical in law and fact, the court will presume the legislature intended to permit multiple punishments. *Pal*, 2017 WI 44, ¶15 (citing *State v. Patterson*, 2010 WI 130, ¶15, 329 Wis. 2d 599, 790 N.W.2d 909). Although legally identical because they alleged violations of the same statute, *id.* at ¶19, the counts against Pal were not factually identical because they involved different victims, *id.* at ¶¶17, 22. Thus, it was up to Pal to rebut the presumption and produce evidence that the legislature intended to punish the hit-and-run deaths of two victims with only one conviction under Wis. Stat. § 346.67(1). Because there was no evidence as to the legislature's intent, he failed to rebut the presumption.

As the court understands Pal's argument, he contends that the Wisconsin Supreme Court should not have required him to rebut a presumption that the legislature intended to permit multiple punishments when multiple deaths result as part of a violation of the relevant hit-and-run statute. He argues that the court should have applied the "unit of prosecution" test, under which the court examines the statute to determine what is an "allowable 'unit' of prosecution" (ECF No. 11 at 3 (citing *United States v. Allender*, 62 F.3d 909, 912 (7th Cir. 1995))). Pal argues that, when a single act leads the state charging a defendant with multiple counts of violating the same statute, the offenses always will be factually distinct. Thus, application of the test articulated by the Wisconsin Supreme Court will always result in a presumption that the legislature intended multiple punishments. It will then always be up to the defendant to rebut the presumption with evidence of a contrary legislative intent. Whenever the legislative intent behind a statute is unclear (as it is here, according to Pal), the defendant will never be able to meet his burden.

Under the unit of prosecution test, Pal argues, there is no presumption that the legislature intended multiple punishments when the charges at issue are not the same in law or fact. Without a presumption to rebut, and given the alleged lack of clarity as to the legislature's intent behind the statute, Pal argues that application of the unit of prosecution test "likely" would have resulted in the Wisconsin Supreme Court finding in Pal's favor. (ECF No. 11 at 5.)

The court questions whether what Pal characterizes as the "unit of prosecution" test necessarily constitutes a comprehensive test for assessing claims of multiplicity. In particular, the court questions whether any such assessment necessarily precludes the use of presumptions such as those used by the Wisconsin Supreme Court. Rather, discerning the "unit of prosecution" may be seen simply as an aspect of the analysis in any "same statute" multiplicity claim. In fact, contrary to Pal's contention, the Wisconsin Supreme Court *did* determine the unit of prosecution for the crime of hit-and-run resulting in death. The majority and the concurrence of Chief Justice Roggensack and Justice Rebecca Bradley agreed that the unit of prosecution was the number of victims. *Id*. at ¶23. The concurrence of Justice Kelly, joined by Justices Abrahamson and Ann Walsh Bradley, viewed the unit of prosecution to be the number of accidents. *Id.* at ¶54. But the distinction was inconsequential to Pal's appeal because these concurring justices all found that there were two accidents, each of which resulted in a death. Thus, the Wisconsin Supreme Court was unanimous in affirming Pal's convictions.

But setting aside questions as to the nature of what he terms the "unit of prosecution" test, the problem with Pal's argument is that the United States Supreme Court has never held that a state court is constitutionally required to follow any particular "test" to discern whether the legislature intended multiple punishments. The fact that the Wisconsin Supreme Court presumed that the legislature intended multiple

punishments and left it to Pal to produce evidence of contrary legislative intent was not clearly contrary to federal law as determined by the United States Supreme Court. Therefore, Pal cannot obtain habeas relief on this claim.

3. **Rule of Lenity**

Pal argues that the Wisconsin Supreme Court erred by not applying the rule of lenity. The court understands Pal to be arguing that it was inconsistent with the rule of lenity for the Wisconsin Supreme Court to presume the legislature intended multiple punishments and to require him to produce evidence of contrary legislative intent.

"[T]he rule of lenity instructs that ambiguity in the meaning of a statutory provision should be resolved in favor of the defendant." *United States v. Turcotte*, 405 F.3d 515, 535 (7th Cir. 2005); *see also Bell v. United States*, 349 U.S. 81, 83 (1955) ("It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment."). However, this principle of statutory construction comes into play only "where there is a 'grievous ambiguity or uncertainty in the language and structure of the Act,'" *United States v. Turcotte*, 405 F.3d 515, 535 (7th Cir. 2005) (quoting *United States v. Ranum*, 96 F.3d 1020, 1030 (7th Cir. 1996)), "that is unresolved even after textual, historical, and intentional analysis," *United States v. O'Connell*, No. 17-CR-50, 2017 U.S. Dist. LEXIS 172491, at *22 (E.D. Wis. Sep. 5, 2017) (citing *Caron v. United States*, 524 U.S. 308, 316 (1998)); *see also Reno v. Koray*, 515 U.S. 50, 65 (1995) ("The rule of lenity applies only if, after seizing everything from

8

Case 2:18-cv-00404-BHL    Filed 01/16/19    Page 8 of 14    Document 13

which aid can be derived, we can make no more than a guess as to what Congress intended." (internal citations and quotation marks omitted)). "In other words, the rule of lenity 'only serves as an aide for resolving an ambiguity; it is not to be used to beget one.'" *United States v. Turcotte*, 405 F.3d 515, 535 (7th Cir. 2005) (quoting *Callanan v. United States*, 364 U.S. 587, 596 (1961)).

However, a state petitioner is not entitled to federal habeas relief on the ground that a state court failed to apply or misapplied the rule of lenity. *Lurie v. Wittner*, 228 F.3d 113, 126 (2d Cir. 2000) ("On the ground that the rule of lenity is a canon of construction rather than a federal law, at least two circuits have determined--and we see no Supreme Court caselaw to the contrary--that federal courts cannot vacate a state conviction on lenity grounds unless a state criminal statute (i) is unconstitutionally vague, or (ii) otherwise fails to give constitutionally required 'fair notice.'") (citing *Poole v. Wood*, 45 F.3d 246, 249 (8th Cir. 1995) (vagueness); *Sabetti v. DiPaolo*, 16 F.3d 16, 19 (1st Cir. 1994) (fair notice)); *see also Robertson v. Harris*, No. C 10-05027 EJD (PR), 2015 U.S. Dist. LEXIS 90068, at *38 (N.D. Cal. July 10, 2015) ("The state's alleged failure to apply this rule of statutory construction cannot be the basis for federal habeas relief."); *Horton v. Richard*, No. 2:12-CV-757, 2013 U.S. Dist. LEXIS 142066, at *53 (S.D. Ohio Oct. 1, 2013) ("Petitioner's assertion that his sentence violated the 'rule of lenity,' fails to present an issue of constitutional dimension that is appropriate for federal habeas corpus relief. '[T]he rule of lenity is merely a canon of statutory interpretation' and nothing in the

Constitution requires the state courts to apply this rule in interpreting state statutes. *See Featherkile v. Warden*, No. 1:07-cv-01023, 2010 U.S. Dist. LEXIS 12469, 2010 WL 546118, at *15-16 (S.D. Ohio Feb.12, 2010) (citations omitted).").

Pal has not identified any decision of the United States Supreme Court holding that a state court must apply the rule of lenity in interpreting state law. Citing *Johnson v. United States*, 135 S. Ct. 2551, 2567 (2015) and *City of Chicago v. Morales*, 527 U.S. 41, 55 (1999), Pal states: "Using the rule of lenity, the United States Supreme Court consistently strikes down ambiguous laws on the basis that they violate the Fourteenth Amendment Due Process Clause." (ECF No. 11 at 6.) However, neither *Johnson* nor *Morales* involved the rule of lenity. Rather, both involved claims under the Due Process Clause and what is commonly referred to as the "void for vagueness" doctrine.

But Pal does not challenge Wis. Stat. § 346.67(1) as vague in violation of the Due Process Clause. His argument is simply that, in interpreting the statute, the Wisconsin Supreme Court should have applied the rule of lenity. But that is not a cognizable claim for federal habeas relief. *Cf. Sabetti v. DiPaolo*, 16 F.3d 16, 19 (1st Cir. 1994) ("[Petitioner] has not pointed to anything in the federal Constitution … that would require a state court to apply the rule of lenity when interpreting a state statute."). "Federal courts have no power to dictate to state courts rules of statutory construction or mandate adoption of the rule of lenity." *Butler v. O'Brien*, 663 F.3d 514, 519 (1st Cir. 2011).

Setting aside the problem that the claim is not cognizable in habeas, the rule of lenity would come into play only if the statute is ambiguous. In asserting that "the State itself acknowledged that the statute here is ambiguous" (ECF No. 1-1 at 13; *see also* ECF No. 11 at 6), Pal misrepresents the record. The state did not acknowledge that the statute was ambiguous. Rather, the state noted only that "[n]othing in the legislative history indicates that the Legislature intended to limit the number of charges that may be filed resulting from a multi-victim hit-and-run accident." *Pal*, 2017 WI 44, ¶26. The state's acknowledgment says nothing about the clarity of the statute itself.

The Wisconsin Supreme Court never found the statute to be ambiguous. A federal court could not now supersede that conclusion. *See Gollehon v. Mahoney*, 626 F.3d 1019, 1027 (9th Cir. 2010).

**4. Due Process**

Finally, Pal argues, "[t]he State violated Mr. Pal's due process rights by a lack of fair notice." (ECF No. 1 at 7.) Specifically, he contends that, "[b]ecause the Wisconsin Supreme Court did not agree on one test to use for multiplicity claims, Mr. Pal did not receive fair notice of what constitutes multiplicity in Wisconsin." (*Id*.)

"Before pursuing habeas relief in federal court, a state prisoner must exhaust available state-court remedies." *Reynolds v. Hepp*, 902 F.3d 699, 705 (7th Cir. 2018) (citing 28 U.S.C. § 2254(b)(1)). That means that every level of state court must first be given a "full and fair opportunity" to adjudicate each of the prisoner's constitutional claims.

*Moore v. Parke*, 148 F.3d 705, 708 (7th Cir. 1998) (citing *Picard v. Connor*, 404 U.S. 270, 276, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971)). A full opportunity means the prisoner's claims were presented through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

If a claim is unexhausted and the petitioner does not have the means to present it in state court, the claim is procedurally defaulted. *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). A federal court can review it only if the petitioner shows "cause and prejudice" for his default or that he is actually innocent of the underlying offense. *Reynolds v. Hepp*, 902 F.3d 699, 705 (7th Cir. 2018).

Obviously, this claim is unexhausted. It arose only as a result of the Wisconsin Supreme Court's decision, which was the last state court decision before Pal filed his federal habeas petition. The court finds no basis for excusing Pal's procedural default of this claim. The nature of Pal's claim makes hearing this unexhausted claim an especial affront to the principle of comity. Pal asks this court to not simply review a constitutional question that a state court is equally well-suited to resolve, but to conclude that a state supreme court, by issuing what Pal regards as a deficient decision, violated his right to due process.

Beyond the obvious lack of exhaustion, the court finds no merit to Pal's claim. *Cf.* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in

the courts of the State.") The court disagrees with Pal's characterization of the decision as a "fractured Supreme Court decision." (ECF No. 1-1 at 14.) But setting that point aside, Pal has failed to identify any decision of the United States Supreme Court that clearly holds that, when a state supreme court decision fails to clear up uncertainty as to the state of the law, it denies that defendant due process.

Pal's proposal is radical in the extreme. Decisions of large appellate panels are frequently fractured. Sorting out the meaning of divergent concurring and dissenting opinions is a routine task that courts and litigants must tackle in subsequent litigation. What Pal suggests is that, rather than being wrinkles to be ironed out in subsequent litigation, a lack of a comprehensive decision is itself a violation of the litigant's due process rights. This novel argument cannot form the basis for federal habeas relief. *Wright v. Van Patten*, 552 U.S. 120, 126 (2008).

**IT IS THEREFORE RECOMMENDED** that the respondent's motion to dismiss be granted and Pal's petition for a writ of habeas corpus be dismissed with prejudice.

**IT IS FURTHER RECOMMENDED** that the court deny Pal a certificate of appealability, the petitioner having failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a) whereby written objections to any order herein or part thereof may be filed within

fourteen days of service of this order. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal.

Dated at Milwaukee, Wisconsin this 16th day of January, 2019.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge